IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
DARRELL SIMPSON,                )
                                )
     Petitioner,                )
                                )    CIVIL ACTION NO.
     v.                         )     2:04cv746-MHT
                                )         (WO)
UNITED STATES OF AMERICA,       )
                                )
     Respondent.                )
```

OPINION

Pursuant to 28 U.S.C. § 2255, petitioner Darrell Simpson, a federal inmate, filed this lawsuit seeking habeas relief. This lawsuit is now before the court on the recommendation of the United States Magistrate Judge that Simpson's writ petition be granted as follows: That his sentence of 488 months be vacated and that Simpson be re-sentenced in accordance and manner consistent with the original plea agreement. Also before the court are respondent United States of America's objections to the recommendation. After an independent and de novo review

of the record, the court concludes that the government's objection should be overruled and that the magistrate judge's recommendation adopted, albeit with these additional comments.

The government objects to the magistrate judge's recommendation on two grounds. First, it argues that, under former Federal Rule of Criminal Procedure 11(f), a district court may vacate a guilty plea <u>sua sponte</u> where a defendant denies his guilt as to the relevant facts in the plea agreement. Therefore, attorney Maurice Bell's failure to object to the district court's <u>sua sponte</u> vacatur of Simpson's guilty plea was not deficient representation. Second, the government argues that, even if attorney Deborah M. Nickson failed to advise Simpson that the original plea was still available, it is undisputed that she did communicate a plea offer to Simpson immediately prior to trial. The government contends that, "if Simpson were as eager for a plea deal as his pleadings and testimony indicate he was, he would

have inquired as to the terms of the offer--any offer--upon hearing of an alternative to trial." In addition, the government argues that the magistrate judge failed to declare formally that Nickson was ineffective as to her communication with her client.

For the reasons stated by, and based on the factual finding of, the magistrate judge, the court is convinced that attorney Bell provided ineffective assistance of counsel. While courts have interpreted former Rule 11(f) to state that acceptance of the guilty plea does not foreclose a subsequent rejection of the plea if factual questions emerge, for example at sentencing, it cannot be read to authorize the court to vacate a plea on the basis of a discrepancy in the parties' understanding of the plea agreement. The Supreme Court has held that "a district judge satisfies the requirement of Rule 11(f) when he determines that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which

the defendant has pleaded guilty." Libretti v. United States, 516 U.S. 29, 38 (1995) (citation and internal quotation marks omitted). In protesting at his sentencing hearing, Simpson was not asserting facts that tended to negate his guilt with respect to the charge to which he had pleaded guilty, nor was he claiming that he was innocent of that charge. Instead, the transcripts clearly indicate that he admitted to the sentencing judge that he was guilty for selling 20 grams of cocaine. Bell's failure to object to the trial judge's sua sponte vacatur of Simpson's guilty plea constituted performance that fell below an objective standard of reasonableness.

The government's second objection is premised on the argument that Simpson was unable to prove that he was prejudiced by Bell's failure to object to the trial judge's vacatur of the plea because attorney Nickson communicated a plea offer to Simpson immediately prior to trial that he rejected. The government argues, as stated, that, "if Simpson were as eager for a plea deal

as his pleadings and testimony indicate he was, he would have inquired as to the terms of the offer--any offer--upon hearing of an alternative to trial." The magistrate judge is somewhat unclear in addressing this concern, and the court now makes explicit what may be only implicit.

In order for Simpson to demonstrate that he was prejudiced by Bell's inaction, he would need to prove that he was never informed of the availability of the original plea agreement prior to trial. If Simpson was informed that the original plea continued to be available after Bell's failure to object and prior to trial and he chose not to accept it, then he was not prejudiced. However, if Simpson was not informed of the availability of the original plea, then the court must address the government's argument that the fact that he was informed of the availability of a plea, and did not pursue it any further, demonstrates that he was not prejudiced by Bell's failure to object.

5

The issue of Simpson's knowledge of the availability of the original plea goes to the credibility of the witnesses at the evidentiary hearing before the magistrate judge.  It is undisputed that Simpson was illiterate from the beginning of the proceedings through trial; therefore, the only way in which he could have learned about the content of the plea agreement was through his counsel.

In the hearing, Simpson and Nickson offered conflicting testimony regarding whether Nickson ever informed Simpson that the original plea was still available prior to trial.  It is undisputed that prior to Simpson's trial, Nickson, the attorney for the government, and the trial judge had a meeting in chambers.  In that meeting, the trial judge instructed Nickson that, if Simpson wanted to plead in accordance with the terms offered by the government in the plea agreement vacated earlier, the court would accept a plea that morning.

Simpson testified that, two weeks prior to this meeting, he saw the videotape of the drug transaction. At that point, he determined that the jury would find him guilty. Simpson did not see a way to avoid conviction and therefore he told Nickson that, since he had been forced to go to trial, he wanted to admit his guilt to the jury on the stand and let the jury know that he "pled guilty before." Nickson responded, "That's crazy," and told Simpson not to worry about the tape. She told him that she was "going to get the tape thrown out" because the chain of custody had been broke. Without fully understanding what she meant when describing the break in the chain of custody, Simpson told Nickson that, "Whatever you're going to do, just do it."

On the day of trial, Nickson informed Simpson that the government offered him a plea. Simpson responded, "What did they say?" Nickson told him, "Don't even worry about it, because I know you're not going to accept it." Simpson testified that he never knew that the original

7

plea was still on the table prior to trial until he read Nickson's affidavit filed after the trial in response to Simpson's motion to vacate the sentence.

The court agrees with the magistrate judge's credibility findings as to the testimony of Simpson and Nickson, in particular that Nickson was not credible because of her selective failure of memory as demonstrated throughout the evidentiary hearing. The court therefore concludes that Simpson would have accepted the renewed offer of the original plea if he had known of its availability. Specifically, Simpson testified that prior to trial he knew that a jury would find him guilty based on the videotape and audiotape evidence. Knowing this, he asked Nickson if he could admit his guilt on the stand at trial and explain that he had been forced to go to trial by the court's withdrawal of his guilty plea. Based on this testimony, it is clear that, if he had known that the original plea was available, he would have accepted it.

The government, nevertheless, asserts that Simpson's admitted failure to pursue a plea agreement, even if he was not informed that it was the original plea agreement, demonstrates that he did not intend to plead guilty under any circumstances. In particular, the government argues that, "if Simpson were as eager for a plea deal as his pleadings and testimony indicate he was, he would have inquired as to the terms of the offer--any offer--upon hearing of an alternative to trial." His failure to do so, the government argues, shows that he was not prejudiced by Bell's failure to object to the trial judge's sua sponte vacatur of the original plea agreement.

According to Simpson's credible testimony, when Nickson told him that the government offered him a plea, he inquired as to the details. He specifically asked Nickson, "What did they say?" In response to this inquiry, Nickson preemptively rejected the plea by

telling Simpson, "Don't even worry about it, because I know you're not going to accept it."

Given that Nickson had already advised Simpson in their initial interview that the plea agreement vacated by the trial judge was a fair offer, it was reasonable for Simpson to conclude, based on Nickson's preemptive rejection of the plea, that the plea offered by the government had less favorable terms than the original and not to pursue the offer any further.  Therefore, Simpson's failure to pursue further the plea agreement preemptively rejected by Nickson does not demonstrate that he did not intend to plead guilty on the basis of the original terms.  Instead, his inquiry to Nickson regarding the terms of the plea agreement indicates his willingness to pursue such a course, particularly if he had known that the original plea agreement was still on the table.

The court finds that Simpson was prejudiced by Bell's failure to object to the trial judge's vacatur of the plea agreement.

The court also agrees with the magistrate judge's, and so finds, that Nickson provided ineffective assistance of counsel by failing to inform Simpson of the terms of the plea offered by the government and that Simpson was prejudiced by this failure.

An appropriate judgment will be entered.

DONE, this the 19th day of October, 2009.

                                         /s/ Myron H. Thompson
                                      **UNITED STATES DISTRICT JUDGE**